**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HDMI LICENSING ADMINISTRATOR INC., <br><br> Plaintiff, <br> vs. <br><br> CHUNGHSIN TECHNOLOGY GROUP CO. LTD; CHANGZHOU WUJIN BEST ELECTRONIC CABLES CO, LTD.; DONGGUAN LONTION ELECTRONIC TECHNOLOGY; DONGGUAN NAFNE ELECTRONIC TECHNOLOGY; SHENZHEN GYS TECHNOLOGY CO LTD, <br><br> Defendants. | Case No.: 2:20-cv-00028-GMN-NJK <br><br> **ORDER** |

Pending before the Court is Plaintiff HDMI Licensing Administrator Inc.'s ("Plaintiff's") *ex parte* Motion for Temporary Restraining Order and Preliminary Injunction, (ECF Nos. 2–3[1]). For the reasons discussed below the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion.

**I.  BACKGROUND**

This case arises from Defendants allegedly selling goods with counterfeit trademarks at the Computer Electronics Show ("CES"). Over a decade ago, several electronics companies worked together to create the High-Definition Multimedia Interface Specification ("HDMI Specification"), the industry leading interface that connects consumer products capable of sending or receiving a high-definition ("HD") signal through a single cable. (Verified Compl. ("Compl.") ¶¶ 15–21). Plaintiff owns the federally registered "HDMI" marks, which it licenses

---

[1] ECF Nos. 2 and 3 are the same document. Hereinafter, the Court refer to Plaintiff's Motion using ECF No. 2.

to electronics companies whose products pass its testing and certification process. (*Id.* ¶¶ 21–23, 28). Because goods with the HDMI marks must pass Plaintiff's testing, the marks indicate that the goods "are fully interoperable and accurately transmit and render commercial audiovisual content to the highest technical standards." (*Id.* ¶ 31). The HDMI marks represent the "physical, logical, and electrical integrity and interoperability of the HDMI components in the Licensed Products, and symbolize the goodwill and reputation of [Plaintiff]." (*Id.* ¶ 30). Plaintiff alleges that it vigilantly polices its marks. (*Id.* ¶¶ 26, 28–29).

Defendants are Chinese companies with no regular presence in the United States who are allegedly using Plaintiff's marks without authorization[2] on products they are currently marketing for sale at CES, the largest consumer electronics show in the world. (*Id.* ¶¶ 6–14, 36–38). Defendants have allegedly infringed Plaintiff's marks by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Unauthorized Products baring counterfeit HDMI marks," which they are allegedly continuing to do at CES. (*Id.* ¶¶ 39, 78). Plaintiff anticipated Defendants' conduct at CES and sent them infringement notices prior to the tradeshow; Plaintiff subsequently verified Defendants' infringement when it sent a representative to Defendants' CES booths. (*Id.* ¶¶ 79, 85–86). The representative took photographs of the allegedly infringing products, which Plaintiff provides to the Court. (Photographs of Infringing Products, Ex. J to Compl.).[3] Given

---

[2] Trademarks used without authorization, when the marks are registered on the principal register, are considered counterfeit marks under the Lanham Act. 15 U.S.C. 1116(d)(1)(B)(i). Plaintiff's marks are registered on the principal register. (*See* Trademark Registration, Ex. A to Compl.).

[3] Plaintiff alleges that it has sent Defendants infringement notices on multiple other occasions, and they have initiated multiple takedown notices to online retailers offering the products with the infringing marks. (*Id.* ¶¶ 42–48, 55, 58, 62–63, 68, 72–73). Plaintiff also alleges that Defendants Chunghsin Technology Group Co. LTD ("CNC"), Changzhou Wujin Best Electronic Cables Co., Ltd. ("Best"), and Nanfe Electronic Technology ("Nanfe") previously had licensing agreements with Plaintiff, which they breached by failing to pay royalties, and their licenses have been terminated. (*Id.* ¶¶ 40–47, 51–60, 71) (*See* Licensing Agreements and Termination Notices, Exs. B–E, G–I to Compl.).

1  that Defendants are not HDMI licensees, their products have not been certified to meet the
2  standards of interoperability and quality that the marks represent. (*Id.* ¶ 76).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). Furthermore, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

## III.     DISCUSSION

Plaintiff seeks a temporary restraining order: (1) enjoining Defendants from using the HDMI marks; (2) directing law enforcement agents to seize the Defendants' goods at CES baring the HDMI marks; and (3) permitting Plaintiff to submit a $10,000 bond. (Mot. TRO, 14:17–15:2, 17:7, ECF No. 2). The Court begins with the four-factor *Winter* test to determine the propriety of granting the requested temporary restraining order.

### a.   Likelihood of Success on the Merits

To prevail on a trademark infringement claim, a plaintiff must show it is: "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013). Plaintiff has demonstrated that the HDMI marks are valid and protectable. Plaintiff has rights in registered HDMI marks including those identified under Registration Nos. 3,268,924 and 3,442,135. (Mot. TRO 5:5–13)[4]; (*see* Trademark Registration, Ex. A to Compl.).

---

[4] The Court may take judicial notice of the issuance of trademark registrations. *See, e.g.*, *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1065 n.2 (9th Cir. 2006).

Plaintiff's registration provides prima facie evidence of the marks' validity and exclusive rights in the marks. *See Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006). Ordinarily, to assess the likelihood of consumer confusion, the Court would have to analyze the similarity of the marks under a multifactor test. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). However, as here, when the marks are counterfeit marks, the analysis is not necessary because counterfeit marks are inherently confusing. *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004). Therefore, Plaintiff has demonstrated a likelihood of success on the merits.

### b. Irreparable Harm

A plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Winter*, 555 U.S. at 21. "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC*, 736 F.3d at 1251. "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).

Plaintiff has sufficiently established irreparable harm. CES is the largest consumer electronics show in the world, and exhibitors attend the show to grow and develop key business relationships. (Compl. ¶¶ 37–38). Because Plaintiff has demonstrated that Defendants' use of its marks will likely mislead consumers as to the source, sponsorship, or quality of Defendants' goods, CES attendees are likely to mistake Defendants' goods for those licensed by the Plaintiff. Defendants' use of the marks on their allegedly substandard products risks eroding the goodwill in Plaintiff's marks and undermining the value of obtaining a license with Plaintiff. (*Id.* ¶¶ 83–84, 87–88). Plaintiff also demonstrates irreparable harm because its licensees will likely lose sales to Defendants because Defendants are selling apparently identical products as those sold by Plaintiff's licensees under Plaintiff's marks, causing Plaintiff

to lose royalties. (*Id.* ¶ 88). Plaintiff also alleges that litigating a case against Defendants would be challenging because they limit their presence in the United States to appearing at CES in order to avoid consequences for their infringement. (*Id.* ¶ 86).

The Court is satisfied that these arguments establish irreparable harm. Court have recognized that damage to goodwill and reputation supports a finding of irreparable harm. *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under this court's precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."). Moreover, courts have held that irreparable harm may be shown where a defendant "has no presence in the United States," making it "difficult or impossible . . . to recover a money judgment." *Omix-ADA, Inc. v. Qingdao Hairunkaiyuan Auto Parts Co., Ltd.*, No. 2:17-cv-02748-MMD-PAL, 2017 WL 9400748, at *1 (D. Nev. Nov. 22, 2017).

### c. Balance of the Equities

"Before issuing a preliminary injunction, courts must weigh 'the competing claims of injury and [ ] consider the effect on each party of the granting or withholding of the requested relief.'" *Moroccanoil, Inc.*, 230 F. Supp. 3d at 1178 (quoting *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)).

Plaintiff argues that, absent the issuance of a temporary restraining order, it will suffer harm to its business and the goodwill associated with its marks; whereas, Defendants are selling substandard products by passing off Plaintiff's marks as their own. (Mot. TRO 18:2–7); (Compl. ¶ 82). The Court agrees that the balance of equities favors Plaintiff because Defendants have no right to profit from their alleged infringement with impunity. Additionally, as discussed above, Plaintiff would suffer irreparable harm in the absence of an injunction due to its loss of control over its marks, damaging its goodwill and reputation. Finally, because the Court is satisfied that the use of counterfeit marks gives rise to an inference of intent, the Court

concludes that the equities weigh in favor of injunctive relief. *Cf.*, *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1072 (E.D. Cal.)

### d. Public Interest

"Trademarks protect the public from confusion by accurately indicating the source of a product." *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 715 (9th Cir. 2005). "Preventing consumer confusion serves the public interest and there is a strong policy in favor of protecting rights to trademarks." *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1067 (N.D. Cal. 2012). Thus, it follows that an injunction premised upon "serious questions" going to the merits of trademark infringement action serves the public interest. *See, e.g.*, *Moroccanoil, Inc.*, 230 F. Supp. 3d at 1178.

Here, given the strong public policy in favor of mitigating customer confusion coupled with Plaintiff's demonstration of a likelihood of success on the merits, the Court finds that the public interest supports issuance of a temporary restraining order.

### e. Seizure Order

The Lanham Act authorizes district courts to grant *ex parte* applications for the seizure of goods baring counterfeit marks when the allegedly infringed mark is registered on the principal register. 15 U.S.C. § 1116(d)(1)(A)–(B). To prevail on an *ex parte* motion for seizure of counterfeit goods, the movant must demonstrate that: (1) only an *ex parte* seizure order would provide adequate relief; (2) the movant "has not publicized the requested seizure;" (3) the movant is likely to succeed on the merits demonstrating that the defendant used a counterfeit mark; (4) irreparable harm in the absence of seizure; (5) "the matter to be seized will be located at the place identified in the application" (6) The balance of equities favors granting seizure; and (7) the defendant or those acting in concert with the defendant, "would destroy, move, hide, or otherwise make such matter inaccessible to the court" if the person received notice from the movant. 15 U.S.C. § 1116(d)(4)(B). Additionally, the movant must

provide notice of the motion to the attorney general of the state in which the district court sits, and the movant must provide the court with: (1) "the findings of fact and conclusions of law required for the order;" (2) "a particular description of the matter to be seized, and a description of each place at which such matter is to be seized;" (3) the time period for seizure; (4) "the amount of security required;" and (5) a request for hearing. 15 U.S.C. § 1116(d)(3), (5).

Plaintiff alleges that only an *ex parte* seizure order can adequately preserve evidence and prevent infringement because, if not seized now, "[the goods] will be difficult or impossible to collect later" because of Defendants' lack of a United States presence. (Mot. TRO 15:20–23; 16:23–28). Plaintiff has not publicized the instant request, (*Id.* 1:16 n.2), and the attorney general has notice of the Motion, (*Id.* 15:19 n.8). The Court analyzed the likelihood of success on the merits, the irreparable harm, and the balance of equities when discussing whether to grant a temporary restraining order. Plaintiff has indicated that the goods are at Defendants' booths at CES, and the goods must be seized during the course of CES. Plaintiff has also proposed posting adequate bond.

Plaintiff has failed to meet its burden its burden in two ways. First, it has not identified the items to be seized with particularity.[5] The description should put the United States Marshalls on of the items they should seize in the event a seizure order is granted. *See, e.g.*, *Las Vegas Sands Corp. v. Ming*, 360 F. Supp. 3d 1072 (D. Nev. 2019); *Nike, Inc. v. QiLoo Int'l Ltd.*, No. 2:12-cv-00191-GMN-GWF, 2012 U.S. Dist. LEXIS 189477 (D. Nev. Feb. 7, 2012) (identifying the infringing products by product number). The pictures provided in Exhibit J to the Complaint are difficult to interpret and do not provide adequate notice of the items to be seized.

---

[5] Plaintiff should also identify the booths by number to assist the United States Marshalls to identify the place where items are to be seized in the event the Court grants a seizure order after providing leave to amend.

Second, even if the Court were to grant Plaintiff's request for seizure after renewed motion, the Court is unsure that it could lawfully order seizure of all goods from CNC, Best, and Nan Feng. Under 15 U.S.C. § 1116, the Court is empowered to order seizure of goods baring counterfeit marks. However, counterfeit marks exclude those where the manufacturer was authorized to use the marks at the time the goods baring the marks were manufactured. 15 U.S.C. § 1116(d)(1)(B). CNC had a license to use the marks as recently as May 31, 2018. (Compl. ¶ 44). Best had a license to use the marks as recently as October 21, 2019. (*Id.* ¶ 58). While not in the recent past, Nan Feng had a license to use the marks until about January of 2012. (*Id.* ¶ 68). Therefore, before ordering seizure of goods from the former licensees, Plaintiff must demonstrate to the Court that the goods sought to be seized were not authorized to bare Plaintiff's marks at the time of their manufacture. Otherwise, although Plaintiff has demonstrated a likelihood of success on the merits for a claim of infringement, Plaintiff has not he is "likely to succeed in showing that the person against whom seizure would be ordered used a *counterfeit* mark in connection with sale, offering for sale, or distribution of goods or services," as is required. 15 U.S.C. 1116(d)(4)(B)(iii) (emphasis added).

//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (ECF Nos. 2–3) is **GRANTED in part** and **DENIED in part**. The Court **GRANTS** Plaintiff a temporary injunction. Defendants are hereby **ENJOINED** from advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in goods baring the Plaintiff's trademarks at CES 2020. The Court **DENIES** Plaintiff's request for seizure with leave to amend to correct the deficiencies highlighted in this Order.

**IT IS FURTHER ORDERED** that this Order, the Motion for Temporary Restraining Order and Preliminary Injunction, and the Summons and Complaint must be served upon Defendants or their representatives, whether at CES 2020, or by other means reasonably calculated to give Defendants notice of this action.

**IT IS FURTHER ORDERED** that a preliminary injunction hearing is set for **Friday, January 10, 2020 at 2:30 p.m.**, in Courtroom 7D before the Honorable Gloria M. Navarro, United States District Judge.

Defendants shall file and serve any opposition to Plaintiff's Motion for Preliminary Injunction by **Thursday, January 9, 2020 at 5:00 p.m.**.

Plaintiff shall file and serve any reply in support of its Motion for Preliminary Injunction by **Friday, January 10, 2020 at 11:00 a.m.**.

**DATED** this __8__ day of January, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court