# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

HDMI LICENSING ADMINISTRATOR INC., )
)
)
Plaintiff, )
vs. )    Case No.: 2:20-cv-00028-GMN-NJK
)
CHUNGHSIN TECHNOLOGY GROUP CO. )    **ORDER**
LTD; CHANGZHOU WUJIN BEST )
ELECTRONIC CABLES CO, LTD.; )
DONGGUAN LONTION ELECTRONIC )
TECHNOLOGY; DONGGUAN NAFNE )
ELECTRONIC TECHNOLOGY; )
SHENZHEN GYS TECHNOLOGY CO LTD, )
)
Defendants. )

Pending before the Court is Plaintiff HDMI Licensing Administrator Inc.'s ("Plaintiff's") Motion for Preliminary Injunction, (ECF No. 3).  After the Court held the preliminary injunction hearing on January 10, 2020, Plaintiff filed a Supplement in support of its Motion, (ECF No. 21).  Defendants have not filed a Response.  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction.

## I.    BACKGROUND

This case arises from Defendants' sale of goods baring Plaintiff's "HDMI" trademarks. Over a decade ago, several electronics companies worked together to create the High-Definition Multimedia Interface Specification ("HDMI Specification"), the industry leading interface that connects consumer products capable of sending or receiving a high-definition ("HD") signal through a single cable. (Verified Compl. ("Compl.") ¶¶ 15–21).  Plaintiff owns the federally registered "HDMI" marks, which it licenses to electronics companies whose products pass its testing and certification processes. (*Id.* ¶¶ 21–23, 28).  Because goods with the

HDMI marks must pass Plaintiff's testing, the marks indicate that the goods "are fully interoperable and accurately transmit and render commercial audiovisual content to the highest technical standards." (*Id.* ¶ 31). The HDMI marks represent the "physical, logical, and electrical integrity and interoperability of the HDMI components in the Licensed Products, and symbolize the goodwill and reputation of [Plaintiff]." (*Id.* ¶ 30). Plaintiff alleges that it vigilantly polices its marks. (*Id.* ¶¶ 26, 28–29).

Defendants are Chinese companies with no regular presence in the United States who are allegedly using Plaintiff's HDMI marks without authorization on infringing goods they offer for sale. (*Id.* ¶¶ 6–14); (*See* Decl. of William Bush ("Bush Decl.") ¶¶ 25, 39, 46–47, 57, 64, 68–69, Ex. 1 to Supp., ECF No. 21-1). Defendants exhibited their goods at the recent Consumer Electronics Show ("CES") in Las Vegas, and Plaintiff sought a Temporary Restraining Order ("TRO") preventing the sale and ordering seizure of the infringing goods. (*See* Mot. TRO, ECF No. 2). The Court granted the TRO but denied the request for seizure. (Order 4:11–9:15, ECF No. 8). Plaintiff alleges that Defendants' physical presence in the United States is limited to annual appearances at CES, but they continue to infringe Plaintiff's trademarks by selling infringing goods to United States consumers from China. (Compl. ¶ 86, ECF No. 1); (Bush Decl. ¶¶ 11, 27, 41, 49, 59, 69). Plaintiff now seeks a preliminary injunction to stop Plaintiff from continuing to sell products baring its marks. (Mot. TRO and Prelim. Inj., ECF Nos. 2–3); (Supp. 2:24–5:12, ECF No. 21).

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. Fed. R. Civ. P. 65(a). A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). "The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

## III.    DISCUSSION

Plaintiff seeks to extend the current TRO into a preliminary injunction. (*See* Supplement, ECF No. 21). For the reasons stated in the Order granting the TRO, the Court is satisfied that Plaintiff has demonstrated likelihood of success on the merits, the balance of equities favors Plaintiff, and the issuance of injunctive relief serves the public interest.[1] (Order 4:17–5:8, 6:13–7:13, ECF No. 8). However, at the January 10, 2020 hearing, the Court expressed skepticism that Plaintiff would be able to demonstrate irreparable harm after the conclusion of CES. The Court begins with an analysis of irreparable harm before turning to Plaintiff's request for alternative service.

//

//

---

[1] Plaintiff's supplemental briefing has not presented any facts that would change the Court's analysis regarding these factors from its Order granting the TRO.

### a. Irreparable Harm

To demonstrate irreparable harm, a plaintiff must show that "remedies available at law, such as monetary damages, are inadequate to compensate for the injury." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Winter*, 555 U.S. at 21. "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC*, 736 F.3d at 1251.

Generally, evidence of consumer confusion about the goods' source alone is insufficient to prove irreparable harm; rather, the movant must provide additional evidence of harm to its ability to control its brand reputation and goodwill in its marks. *See adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756, 760–61 (9th Cir. 2018)[2] ("even if we agree with the district court that some consumers are likely to be confused as to the maker of the Cross Court shoe, we cannot simply assume that such confusion will cause adidas irreparable harm where, as here, adidas has failed to provide concrete evidence that it will."). However, where an infringer and its assets are abroad, and the plaintiff would likely be unable to enforce a money judgment, a showing of a likelihood of success on the merits may establish irreparable harm. *See Hand & Nail Harmony, Inc. v. Guangzhou Cocome Cosmetics Co.*, No. 2:14-cv-01106-RFB-CWH, 2014 U.S. Dist. LEXIS 102525 at *9 (D. Nev. July 15, 2014) ("Further, because many of the Defendants appear to have no presence in the United States, it may be difficult or impossible for Plaintiffs to enforce a monetary judgment."); *see also Cordelia Lighting, Inc. v. Zhejiang Yankon Grp. Co.*, No. EDCV 14-881 JGB, 2015 U.S. Dist. LEXIS 189725 at *24 (C.D. Cal. April 27, 2015) ("The potential difficulty inherent in collecting damages from a

---

[2] Importantly, the plaintiffs in *Herb Reed* or *adidas* did not allege that the defendants would not satisfy a money judgment.

foreign defendant with limited assets in the United States supports a finding of irreparable harm.").

Here, Plaintiff has not provided evidence that would ordinarily support finding irreparable harm. Plaintiff provides evidence that Defendants are selling goods with Plaintiff's marks, which is likely to confuse consumers about the source or quality of the infringing goods. (*See* Bush Decl. ¶¶ 25, 27, 39, 41, 46–47, 49, 57, 59, 64, 68–69); (Order 4:17–5:8). It has not provided evidence regarding the impact of Defendants' sales on its brand.

However, Plaintiff has demonstrated that Defendants come to the United States each year for the sole purpose of attending CES. (Compl. ¶ 86). Otherwise, Defendants and their assets are exclusively in China. (Bush Decl. ¶ 69). Even when Defendants were present for CES, they failed to have counsel make an appearance at the hearing. *See Las Vegas Sands Corp. v. Fan Yu Ming*, 360 F. Supp. 3d 1072, 1080 (D. Nev. 2019) (". . . a defendant's failure to appear or otherwise participate in litigation suggests a likelihood of continued infringement which support a finding of irreparable harm."). Given that Defendants and their assets are abroad, it is unlikely Plaintiff would be able to enforce a money judgment against Defendants. Therefore, Plaintiff has demonstrated irreparable harm if a preliminary injunction does not issue.

### b. Alternative Service

Plaintiff seeks permission to serve Defendant via email and website publication, and it argues that the requested service is permissible under Federal Rule of Civil Procedure 4(f)(3). (Supp. 5:14–7:10). Defendants have already been served a copy of the Summons and Complaint. (*See* Summonses Returned Executed, ECF Nos. 16–20).

Federal Rule of Civil Procedure 65 mandates that "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The notice standard under Rule 65 requires that "those against whom an injunction is issued should receive fair and

precisely drawn notice of what the injunction actually prohibits." *Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1077 (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 444 (1974)).

The Court finds it appropriate to permit Plaintiff to serve this Order upon Defendants via email. The Defendants are Chinese companies with no regular presence in the United States. (Bush Decl. ¶¶ 25, 39, 46–47, 57, 64, 68–69). Plaintiff has successfully corresponded with Defendants via email in the past. (*Id.* ¶¶ 14, 30, 32, 44, 52, 60). Defendants were served in person at CES, and they are therefore aware of the present case. (*See* Summons Returned Executed, ECF Nos. 16–20). Given that Plaintiff has successfully corresponded with Defendants via email, and Defendants are aware of the present action, service via email is likely to provide actual notice of the issuance of the preliminary injunction and its contents. *See Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

The Court denies without prejudice Plaintiff's request to serve Defendants via website publication. (*See* Supp. 7:2–10). Plaintiff provides no details regarding how it would serve via website publication. The Court cannot discern what website the notice would be published on or how it would be likely to notify Defendants of the preliminary injunction.

//

//

//

//

//

//

//

//

//

## IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 3), is **GRANTED**.  During the pendency of these proceedings, Defendants are hereby prohibited from advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in goods baring the Plaintiff's trademarks in the United States.

**IT IS FURTHER ORDERED** that Plaintiff must serve copies of this Order upon Defendants via email.  Plaintiff shall file copies of the emails with the Court once they have been sent.

**IT IS FURTHER ORDERED** that Plaintiff shall deposit $10,000.00 in cash with the Clerk of Court as security for this preliminary injunction.

**IT IS FURTHER ORDERED** that the Clerk of Court shall unseal the Complaint, (ECF No. 1).

**DATED** this __21__ day of January, 2020.


_____
Gloria M. Navarro, District Judge
United States District Court